Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Alyssa Brown (SBN 301313)
abrown@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Ave., Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Counsel to Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMY TRINH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>UNIQLO USA LLC and FAST RETAILING USA, INC.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Amy Trinh ("Plaintiff") through undersigned counsel, brings this Class Action Complaint against Defendants UNIQLO USA LLC and Fast Retailing USA, Inc. (collectively, "Defendant" or "UNIQLO"), and in support thereof alleges as follows:

## INTRODUCTION

1. Plaintiff brings this class action to halt and remedy Defendant's retention of windfall proceeds tied to tariffs imposed under the International Emergency Economy Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, which Defendant passed onto consumers in the form of increased pricing and which Defendant now seeks to recover from the federal government through court-ordered refunds.

2. Because only the importer of record can obtain tariff refunds from the government, and because consumers frequently shoulder the ultimate economic burden of the previously imposed tariffs through higher retail prices, Defendant's approach results in a structural mismatch between injury and recovery that leaves consumers uncompensated. Put simply, while the importer fronts the tariff-related cost, the consumer ultimately pays it.

3. Despite the Supreme Court's invalidation of IEEPA-based tariffs, the persons who actually bore the tariff burden—Defendant's customers—have no direct recourse in the Court of International Trade ("CIT"), where Defendant, as importer of record, is positioned to recoup all such duties. Companies, even those which passed the entirety of their tariff burdens onto their customers, nonetheless remain fully empowered to recover a complete refund for any unlawful tariffs paid.

4. Thousands of companies, including Defendant, have pursued tariff-related refunds in the CIT, despite having already recouped such costs from their customers via elevated prices. Because U.S. customers are paying an estimated two-thirds of tariff-related

costs, companies, including Defendant, stand to obtain an improper double recovery, absent restitution to their customers.[1]

5. This lawsuit seeks to prevent Defendant UNIQLO from double recovery. Defendant has made no commitment to return any portion of anticipated tariff refunds to the consumers who ultimately paid such costs.

6. Plaintiff seeks an order requiring Defendant to disgorge and return to Plaintiff and the Classes all IEEPA-related costs embedded in elevated consumer prices with interest.

7. Plaintiff and the Classes are entitled to restitution of the tariff-related overcharges they paid or a proportionate share of any tariff refunds Defendant recovers, along with interest and attorneys' fees and costs.

## PARTIES

8. Plaintiff Amy Trinh is a natural person and citizen of California, residing in Los Angeles County, California, where Plaintiff intends to remain. Plaintiff is a customer of Defendant UNIQLO and, during the Relevant Time Period, defined *infra*, purchased merchandise that was imported from countries subject to IEEPA tariffs and sold at prices inflated by Defendant's tariff pass-through scheme.

9. Defendant UNIQLO USA LLC is a limited liability company organized in the State of Delaware, with its principal place of business located at 88 Crosby St., 3rd Floor, New York, New York 10012.

10. Defendant Fast Retailing USA, Inc. is a company incorporated under the laws of the State of New York, with its principal place of business located at 38 Gansevoort St., New York, New York 10014. Fast Retailing USA, Inc. is a member of UNIQLO USA LLC.

---

[1] Nick Lichtenberg, *Goldman Sachs Doubles Down on Tariff Research that Infuriated Trump, Saying Average Americans Will Bear Two-Thirds of the Costs*, FORTUNE (Aug. 13, 2025), https://fortune.com/2025/08/13/goldman-sachs-tariffs-donald-trump-david-solomon-dj/.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000.00, excluding interest and costs, and at least one member of the proposed Class is a citizen of a state different from Defendant.

12. This Court has personal jurisdiction over Defendant because Defendant conducts continuous and systematic business in California, operates physical locations in California, and ships goods to and from California regularly.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Plaintiff resides here and a substantial part of the events giving rise to the claims—including purchases of tariffed goods—occurred here. Plaintiff resides in this District and purchased tariffed goods at one of Defendant's locations in this District.

## FACTUAL BACKGROUND

### A. Defendant UNIQLO's Business Model

14. Originally founded in Yamaguchi, Japan as a textiles manufacturer, Defendant UNIQLO is a "global brand …. with a focus on quality and textiles which has been unwavered since the company's origins in 1949."[2]

15. Defendant UNIQLO operates more than 2,400 stores across the world.[3]

16. UNIQLO's business model relies heavily on imports, with as much as 50% of its products being imported from China.[4]

17. This model has been extremely lucrative for UNIQLO: in fiscal year 2025, UNIQLO's global net sales exceeded $21 billion.[5]

---

[2] *About UNIQLO*, UNIQLO, https://www.uniqlo.com/us/en/information (last visited Apr. 30, 2026).

[3] UNIQLO, LINKEDIN, https://www.linkedin.com/company/uniqlo/ (last visited Apr. 30, 2026).

[4] *UNIQLO Made In Which Country*, NEW ASIA GARMENT, https://www.newasiagarment.com/uniqlo-made-in-which-country/ (last visited Apr. 30, 2026).

[5] Results Summary for Fiscal 2025 (Year to August 31, 2025), FAST RETAILING (Oct. 9, 2025), https://www.fastretailing.com/eng/ir/news/2510091800.html.

18. Moreover, Defendant Fast Retailing, UNIQLO's operator, recently "reported record sales and profits."[6]

### B. Implementation and Invalidation of the IEEPA-based tariffs

19. Starting in February 2025, the Trump Administration issued a series of executive orders imposing tariffs on goods from most foreign countries, pursuant to the IEEPA and predicated on a purported national emergency. Among the targeted countries were prominent U.S. trading partners like Canada, Mexico, and China.

20. As part of the IEEPA-based tariffs, the Trump Administration imposed a baseline tariff of 10% on nearly all imports, a tariff of 25% on most goods from Canada and Mexico, and tariffs of up to 145% on goods imported from China.

21. On February 20, 2026, approximately a year after the Trump Administration first began imposing them, the Supreme Court issued its decision invalidating all IEEPA-based tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, 146 S.Ct. 628, 646 (2026).

22. Subsequently, President Trump issued an Executive Order terminating the tariffs and, on February 22, 2026, U.S. Customs and Border Protection ("CBP") announced that it would cease collection of all IEEPA-based tariffs, beginning on February 24, 2026.

23. All told, IEEPA-based tariffs were applied between February 1, 2025 and February 24, 2026 (the "Relevant Time Period").

### C. Defendant's IEEPA-based Price Increases

24. Defendant is a major U.S. importer, with a majority of its U.S. sales attributable to imports, including significant sourcing from East Asian countries like China, Vietnam, and Bangladesh.[7]

25. Because UNIQLO's U.S. operations rely so heavily on imports, UNIQLO was particularly vulnerable to the IEEPA tariffs.

---

[6] Shinya Matsumoto, *Uniqlo Operator Posts Record Profit, Won't Rule Out Price Hikes*, THE ASAHI SHIMBUN (Apr. 10, 2026), https://www.asahi.com/ajw/articles/16489691.

[7] *See* NEW ASIA GARMENT, *supra* note 4.

26. Recognizing this, UNIQLO stated that the IEEPA tariffs would impact its U.S. operations "significantly," and that it would raise prices "to mitigate the blow."[8]

27. UNIQLO's price increases have also been corroborated by firsthand accounts from its customers and employees on social media. For example, in or around July 2025, a Reddit user posted that they "had some items in [their] cart," including jeans, which were priced at $49.50, but which rose to $59.90 the next day.[9] On that same post, another user, who claimed to be a UNIQLO employee, commented, "Mark ups are starting today so many items not just the jeans are going up in price due to tariffs (i work there)."[10]

28. In another post from in or around August 2025, a Reddit user asked, "Anyone noticed that many of their items have gone up by $10?"[11] And on that same post, a commentor noted that UNIQLO's "tags all had a little sticker covering the original price[,]" and shared a photo:[12]




[8] *Uniqlo Owner Warns Significant Tariff Impact, Plans Price Hikes*, REUTERS (July 10, 2025), https://www.reuters.com/business/uniqlo-operator-fast-retailing-9-month-profit-rises-122-2025-07-10/.

[9] /r/uniqlo, *Am I going crazy or did Uniqlo just raise prices on all jeans?*, REDDIT, https://www.reddit.com/r/uniqlo/comments/1mng5b8/am_i_going_crazy_or_did_uniqlo_just_raise_prices/ (last visited Apr. 30, 2026).

[10] *Id.*

[11] /r/uniqlo, *USA Price Increases*, REDDIT, https://www.reddit.com/r/uniqlo/comments/1n6zhuc/usa_price_increases/ (last visited Apr. 30, 2026).

[12] *Id.*

29. UNIQLO's decision to raise prices in response to the IEEPA tariffs yielded it record profits.[13]

30. Thus, Defendant was not only able to insulate its profits from the IEEPA tariffs; it was able to successfully leverage the tariffs to increase its profits, at the expense of its U.S. customer base.

31. As a direct result of Defendant's pass-through pricing, Plaintiff and Class Members paid more for tariffed goods than they would have absent the unlawful IEEPA tariffs.

**D. Defendant's CIT litigation and anticipated refunds.**

32. On January 16, 2026, UNIQLO filed suit in the United States Court of International Trade. *UNIQLO USA LLC et al. v. U.S. et al.*, No. 1:26-cv-00718 (Ct. Int'l Trade Jan. 16, 2026). In its complaint, Defendant seeks a declaratory judgment that the IEEPA tariffs are void with respect to Defendant, and that CBP lacks authority to impose or collect the IEEPA-based tariffs, in addition to an order for the United States to refund Defendant, with interest, for the tariffs Defendant paid pursuant to the IEEPA. *Id.*

33. Following the Supreme Court's *Learning Resources* decision striking down IEEPA tariffs, the Court of International Trade ordered CBP to liquidate or reliquidate entries without regard to IEEPA duties, recognizing importers' entitlement to the benefit of its ruling.

34. The IEEPA-based tariffs caused the collection of approximately $166 billion in duties. And as a major U.S. importer, Defendant stands to receive refunds in the tens of millions of dollars, potentially exceeding $100 million.

35. Although Defendant seeks to, and very likely will, recover tariff refunds, it was not Defendant which bore the brunt of the IEEPA-based tariffs; it was Defendant's customers. Defendant now seeks what amounts to a double recovery: the first recovery

[13] Shinya Matsumoto, *supra* note 6.

took place in the form of revenue generated from its increased prices; the second will come in the form of its forthcoming tariff refund from the federal government.

36. Defendant has made no statements as to how it intends to use the IEEPA-based tariff refunds it seeks, and there is no indication that it plans to compensate the specific consumers who overpaid during the Relevant Time Period, nor to provide any restitution for past overcharges.

## CLASS ALLEGATIONS

37. Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of the following classes:

**Nationwide Class**
All individuals in the United States who purchased, through any UNIQLO retail channel, any good subject to the IEEPA-based tariffs, during the period between February 1, 2025 and February 24, 2026.

**California Subclass**
All individuals in the State of California who purchased, through any UNIQLO retail channel, any good subject to the IEEPA-based tariffs, during the period between February 1, 2025 and February 24, 2026.

38. Excluded from the Classes are Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and any and all federal, state, or local governments; and the judge(s) presiding over this matter and the clerks and family members of said judge(s).

39. Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

40. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

41. **Numerosity**: The Members of the Classes are so numerous that joinder of all members in a single proceeding would be impracticable. Defendant operates thousands of

locations across the United States, sells millions of products monthly, and serves millions of customers. Thus, upon information and belief, the proposed Classes each include millions of individuals who purchased goods subject to the IEEPA-based tariffs during the Relevant Time Period.

42. **Typicality**: Plaintiff's claims are typical of the claims of the Classes that Plaintiff seeks to represent. Plaintiff, like all proposed members of the Classes, purchased goods from Defendant that were imported from countries subject to IEEPA tariffs at prices inflated by Defendant's pass-through pricing. Plaintiff and members of the Classes were injured by the same price increases. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all members of the Classes.

43. **Adequacy**: Plaintiff will fairly and adequately protect the interests of members of the Classes. Plaintiff is an adequate representative of the Classes and has no interests adverse to, or in conflict with, the Classes that Plaintiff seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

44. **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Classes and predominate over any potential questions affecting only individual members of the Classes. Such common questions of law or fact include, *inter alia*:

a. Whether increased prices paid by Defendant's customers were attributable to IEEPA tariffs;

b. Whether Defendant must refund tariff-related duties to customers who had paid them in the form of increased prices;

c. Whether Defendant's retention is of increased consumer payments related to IEEPA tariffs constitutes unjust enrichment;

d. Whether Defendant's conduct was unfair or deceptive when it upcharged its customers in response to tariff-related costs before subsequently retaining reimbursements of those tariff changes;

e. Whether Defendant committed unfair practices under consumer statutes when it simultaneously collected consumer tariff pass-throughs while pursuing government refunds without disclosing that arrangement or establishing a consumer refund mechanism;

f. Whether Defendant's failure to disclose its pending CIT lawsuit to customers constitutes a material omission or misrepresentation under consumer statutes;

g. Whether Defendant's conduct has harmed Plaintiff and the Classes uniformly;

h. The measure of damages available to Plaintiff and the Classes for paying increased prices caused by Defendant's tariff pass-through; and

i. Whether Plaintiff and the Classes are entitled to restitution, damages, treble damages, or injunctive relief.

45. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individuals are insufficient to make individual lawsuits economically feasible.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the California Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On Behalf of Plaintiff and the California Subclass)

46. Plaintiff realleges and incorporates the above allegations as if fully set forth below.

47. Plaintiff brings this claim individually and on behalf of the California Subclass.

48. Defendant is a business entity that, at all relevant times, sold goods and/or services to Plaintiff and the California Subclass and set prices charged to Plaintiff and the California Subclass.

49. The Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 *et seq.*, prohibits any unlawful, unfair, or fraudulent business act or practice.

50. Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's conduct within the meaning of Cal. Bus. & Prof. Code § 17204. Specifically, Plaintiff paid increased prices charged by Defendant that were imposed to recoup costs and duties associated with tariffs implemented under IEEPA, thereby losing money in the amount of the overcharges paid.

51. Plaintiff's economic injury is concrete and particularized, is fairly traceable to Defendant's price increases and related practices, and is redressable through restitution and injunctive relief under the UCL.

**Unlawful Business Acts or Practices**

52. Defendant has engaged in "unlawful" business acts or practices within the meaning of Cal. Bus. & Prof. Code § 17200 by implementing and collecting tariff-related surcharges and/or price increases from Plaintiff and class members while contemporaneously pursuing litigation against the federal government to recover those same tariff-related costs, creating the prospect and effect of a double recovery.

53. Defendant's conduct violates established legal policies prohibiting unjust and duplicative recovery and requiring truthful, non-misleading pricing practices and restitution when a windfall would otherwise result from overlapping recoveries. Defendant's parallel recoupment through increased prices and anticipated recovery through litigation constitutes an unlawful business practice.

**Unfair Business Acts or Practices**

54. Defendant has engaged in "unfair" business acts or practices within the meaning of the Cal. Bus. & Prof. Code § 17200, by: (a) imposing price increases and/or surcharges on Plaintiff and California Subclass Members to recoup IEEPA-based tariff costs; (b) pursuing and, on information and belief, being extremely likely to obtain, recovery of those same tariff-related costs from the federal government; and (c) failing to

account for, credit, or return to Plaintiff and California Subclass Members the amounts previously collected if and when Defendant recovers such amounts through litigation.

55. The gravity of the harm to consumers, including Plaintiff—namely the payment of artificially inflated prices and the risk and likelihood of Defendant's double recovery—outweighs any purported utility of the challenged practices. Less restrictive alternatives were available to Defendant, including disclosing the contingent nature of the tariff-related price increases, escrowing the tariff-recovery component, or committing to provide automatic credits or refunds upon any litigation recovery.

56. Defendant's practices offend established public policy and are immoral, unethical, oppressive, and substantially injurious to consumers because they shift tariff-related costs to consumers while positioning Defendant to retain both the consumer-funded recoupment and the separate litigation recovery, resulting in a windfall at consumers' expense.

**Fraudulent and Deceptive Business Acts or Practices**

57. Defendant has engaged in "fraudulent" business acts or practices within the meaning of the Cal. Bus. & Prof. Code § 17200, by making representations, omissions, and/or practices likely to deceive reasonable consumers regarding the nature, purpose, and disposition of the tariff-related price increases, including but not limited to:

a. Representing, expressly or by implication, that the price increases or surcharges were necessary to cover unavoidable tariff costs without disclosing that Defendant was pursuing litigation to recover those same costs and was extremely likely to prevail;

b. Omitting material facts necessary to prevent consumers from being misled, including the likelihood of Defendant's litigation recovery and the absence of any commitment to refund or credit consumers for the tariff-related amounts previously paid;

c. Failing to disclose that continued collection and retention of tariff-related amounts in the face of an anticipated litigation recovery would result in a double recovery to Defendant.

58. A reasonable consumer would be deceived by Defendant's omissions and practices. Plaintiff and class members were likely to be, and were, misled into paying increased prices under the belief that such increases were necessary and would not result in an unreversed windfall to Defendant.

59. As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent acts and practices, Plaintiff and California Subclass Members paid increased prices and suffered economic injury in the form of overcharges and loss of money or property. Plaintiff would not have paid, or would have paid less than, the tariff-related component of the price had Defendant not engaged in the challenged conduct.

60. Defendant's conduct is ongoing and/or has continuing effects, including the continued retention of tariff-related amounts collected from Plaintiff and California Subclass Members and the imminent or likely receipt of duplicative recoveries from litigation proceeds without provision for restitution, credits, or other consumer redress, absent Court intervention.

61. Plaintiff seeks relief under Cal. Bus. & Prof. Code § 17203 and § 17204, individually and on behalf of the California Subclass, including:

a. Restitution and/or disgorgement to Plaintiff and California Subclass Members of all amounts wrongfully obtained from tariff-related price increases, surcharges, or other charges collected to recoup IEEPA-based tariff costs, in an amount to be proven at trial;

b. An order requiring Defendant to provide appropriate credits, refunds, or accountings to ensure that any litigation recovery of tariff-related costs is not duplicative of amounts already collected from consumers;

c. Injunctive relief enjoining Defendant from engaging in the practices described herein, including collecting, retaining, or failing to refund or

credit tariff-related amounts in a manner that results in double recovery, and requiring clear, conspicuous disclosures and remedial measures [including, without limitation, escrow or trust arrangements for any tariff-recovery components pending final resolution of Defendant's litigation] to prevent future harm;

d. Pre- and post-judgment interest as permitted by law;

e. Attorneys' fees and costs as permitted by law, including under the common fund or substantial benefit doctrines, and any other applicable basis; and

f. Such other and further equitable relief as the Court deems just and proper to prevent Defendant's unjust enrichment and to restore to Plaintiff and California Subclass Members the money wrongfully obtained.

**COUNT II**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

62. Plaintiff realleges and incorporates the above allegations as if fully set forth below.

63. Defendant increased the prices charged to Plaintiff and Class Members to recoup costs and duties associated with tariffs imposed pursuant to the IEEPA during the Relevant Time Period, thereby shifting the tariff-related costs to Plaintiff and Class Members through higher transaction prices.

64. By paying the increased prices, Plaintiff and Class Members conferred a direct monetary benefit upon Defendant in the form of tariff-related cost recovery embedded in the prices charged.

65. Defendant had knowledge of, appreciated, and voluntarily accepted this benefit because Defendant (a) intentionally implemented price increases for the stated purpose of recouping IEEPA tariff costs, and (b) retained the proceeds from those increases paid by Plaintiff and class members.

66. Defendant is currently pursuing litigation against the federal government to recover those same tariff-related costs and duties that Defendant already recouped through

the increased prices charged to Plaintiff and Class Members. *See UNIQLO USA LLC et al. v. U.S. et al.*, No. 1:26-cv-00718 (Ct. Int'l Trade Jan. 16, 2026)

67. Allowing Defendant to retain the tariff-related cost recovery collected from Plaintiff and Class Members while also recovering the same costs from the federal government would result in a double recovery to Defendant for the same alleged injury.

68. Equity and good conscience require that Defendant not be permitted to retain the benefit it obtained from Plaintiff and Class Members to the extent that Defendant has been, or will be, made whole for the same tariff-related costs through its litigation recovery.

69. Defendant's retention of the benefit conferred by Plaintiff and Class Members, without providing restitution or disgorgement corresponding to any recovery of the same tariff-related costs from the federal government, would be unjust, inequitable, and contrary to principles of fairness.

70. Plaintiff and Class Members lack an adequate remedy at law to prevent Defendant's unjust enrichment because, absent equitable relief, Defendant will retain amounts collected from Plaintiff and class members that duplicate the amounts Defendant has been, or will be, reimbursed through its litigation recovery for the same tariff-related costs.

71. Accordingly, Plaintiff and Class Members seek restitution and/or disgorgement from Defendant in an amount equal to the tariff-related cost recovery embedded in the prices paid by Plaintiff and Class Members to the extent those same costs are recovered by Defendant from the federal government, together with pre- and post-judgment interest, and such other and further equitable relief as the Court deems just and proper.

**COUNT III**
**Money Had and Received**
**(On Behalf of Plaintiff and the Nationwide Class)**

72. Plaintiff realleges and incorporates the above allegations as if fully set forth below.

73. This Count specifically concerns Defendant's receipt and expected retention of government refund proceeds, which, in fairness, should be considered a return of funds that were economically borne by Plaintiff and the Class, rather than by Defendant.

74. Defendant received money from Plaintiff and the Class in the form of inflated prices they paid during the Class Period as a result of Defendant passing off its IEEPA-based tariff costs to its customers.

75. The purpose of it receiving this money through its inflated pricing was to pay IEEPA-based duties.

76. The Supreme Court has since concluded that the IEEPA-tariffs were unenforceable and that the Trump Administration lacked the authority to impose them.

77. The money that Defendant's customers paid as a result of the inflated prices related to the IEEPA tariffs rightfully belongs to Plaintiff and the Class.

78. Defendant has not returned the money, nor has it represented that it has any intention of doing so.

79. The principles of equity and fairness demand that Defendant is obligated to return the money its customers paid as a result of the inflated prices they paid, which Defendant imposed in order to financially shield itself from the IEEPA-based tariffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and members of the Classes demand a jury trial on all claims so triable and request that the Court enter an order:

a. Certifying this case as a class action on behalf of Plaintiff and the proposed Classes, appointing Plaintiff as Class Representative, and appointing undersigned counsel to represent the Classes;

b. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Classes;

c. Awarding Plaintiff and the California Subclass actual damages that include applicable compensatory, exemplary, and statutory damages, as allowed by law;

d. Awarding restitution and damages to Plaintiff and the Classes in an amount to be determined at trial;

e. Awarding attorneys' fees and costs, as allowed by law;

f. Awarding prejudgment and post-judgment interest, as provided by law;

g. Granting such other or further relief as the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff, individually and on behalf of the Classes, demands a trial by jury as to all issues triable of right.

Dated: April 30, 2026

Respectfully submitted,

*<u>/s/ Robert Ahdoot</u>*

Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Alyssa Brown (SBN 301313)
abrown@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Ave., Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: 917.336.0171
Facsimile: 917.336.0177

*Counsel to Plaintiff and the Proposed Class*